Arguments not to exceed 15 minutes, preside Mr. Fedenski for the appellant. Morning Your Honors. This is Attorney General John Fedenski on behalf of the appellant, Trooper Ryan Aper. I'd like to reserve five minutes for rebuttal time. This is a qualified immunity appeal at the end of discovery. It was denied down below in the Western District of Michigan and it's an excessive force claim regarding the allegation of excessively tight and unreasonably applied handcuffs. There are two primary arguments for why the district court erred and at the end of the transcript of the hearing the district court noted, well you can take it down to Lansing or down to Cincinnati I should say and they'll take another look at it. The reason this court should take another look at it is because there are some purely legal questions regarding qualified immunity here that were resolved incorrectly and that really set the bar much too low for a handcuffing case. The problem in the Sixth Circuit it seems is the clearly established prong of qualified immunity and whether individuals, troopers, law enforcement officers like Trooper Aper are on fair notice that every complaint of pain or discomfort from handcuffing needs to be addressed immediately. Well don't you and your opposing counsel on the part is really disagree on the factual matter of whether the handcuffs were applied too tightly? You all don't agree on that fact do you? We don't your honor and so we're taking the plaintiff's version of events and so if you take as true the deposition testimony our legal argument is that does not amount to a violation of qualified immunity to a clearly established violation of the Fourth Amendment. Well I believe your opposing counsel not to put words in his mouth would argue that the handcuffs were factually as a matter of fact were so tight and unduly so as to bring the this Morrison case which is seems to be controlling here and if that were the case there would be some disputed facts here that would deprive us of jurisdiction to hear this appeal. Well your honor the facts here are not that extreme. The facts here are a total of thirty to forty minutes. But that's what the two of you disagree on. That's the problem. Well your honor I think maybe we're mistaking how to characterize facts, what inferences to draw from the facts with the factual dispute. We're taking as true the plaintiff's version that okay I had indentations on my wrists afterwards that I never photographed, never showed anyone. We're taking as true that he complained twice and the trooper ignored it twice and at one point said well handcuffs are supposed to hurt. Now looking under the case law as it's developed in the Sixth Circuit it's important to note this incident was on September 28, 2013 before the Baines decision that really took to task a number of the cases like Fetz and O'Malley and Lee that give a different tenor to this whole line of excessively tight handcuffing cases. And so if you have a nighttime stop in a rural area where there are two individuals in a car and the trooper calling for backup, what we have in terms of these facts are no complaint immediately regarding the handcuffing. There might be some lack of clarity in the record but if you look at page ID number 104 that's where the plaintiff, Mr. Hanson, clarified under subsequent questioning he didn't complain right away. He complained about five minutes into the detention when he was placed in the police car. And then he claims he sat for maybe another 30 minutes in the car after that first complaint was ignored and made a later complaint and shortly after that later complaint is when the handcuffs came off. And these complaints were not terribly specific. They were the handcuffs are tight, I have to say. Can you explain the reason he didn't complain more quickly after his first complaint? And it's an entirely, I mean you can understand probably what in his interest to comply. Well I think you raise an interesting point, Your Honor. There's what's expressed and what's reasonably inferred from what's expressed and then there's what's unexpressed and what is inside of a person's mind when they make a complaint. And I don't think the case law says every complaint about discomfort means drop everything and stop what you're doing. And so what you have here is a generalized complaint about five minutes in and no second complaint based upon... You think that an officer genuinely concerned about just on a human level about the individual whom he's handcuffed would at a minimum check? I think that's true, Your Honor, but the qualified immunity analysis says that the ignoring of that complaint has to be so beyond the pale that it's plainly incompetent or no reasonable officer would do that. And in this particular case where you have a nighttime rural stop like this and another individual to deal with back up on the way and you end up having a where it's not disclosed that there's a gun in the car, where you have the odor of marijuana and marijuana found during an inventory search and luggage being removed from that car, the length of detention here and the lack of an immediate response was not required by clearly established law. And the way that this detention ended was the posting of either a $200, $250 bond on the side of the road. And there are cases in the district courts level at least that say when a law enforcement officer has in mind, well, this stop is about to end, these handcuffs are about to come off, there isn't that exigency to check the handcuffs immediately because they're about to come off anyhow. And based upon the timeline we have here with this record, you really don't have the level of culpability, the level of abuse or malice that the Fourth Amendment clearly established law seems to require. And I think another important argument, the second reason why the district court should be reversed is really the lack of an objectively verifiable injury. The case law has said subjective complaints of injury and testimony about numbness and things like that are part of the consideration but they are not in and of themselves sufficient. And here really the thread that's being held on to by the plaintiff is an abnormal EMG test result but no link in terms of causation to the handcuffing. I thought the doctor said that this could be related to the tight handcuffs. Well, he said based upon the history he was given, likely due to the handcuffing, but he wasn't given any history about the chronic conditions that this individual has. And all it really was, in fact, that same doctor said unknown etiology, which means unknown cause. And so it's speculative on this record. No reasonable jury could rely on that speculation that there's a causal link here. And the causal link and the injury are the third element that's required in a handcuffing case. And were this to be adequate, every routine handcuffing would have to go to a jury. I'm sympathetic with that argument, but I did spend 21 years defending doctors and I've read a lot of medical records. And it seems this guy did give an opinion that he thought the, based on the history he was given, the EMG demonstrated an injury. Well that same doctor didn't provide the raw data on which that could have been. Did you ask him? Yes, it was requested in discovery and it wasn't provided. And there was no affidavit from this doctor. It wasn't retained. What's the raw data that you wanted? The EMG report? Correct. And the data from that report that indicates that this particular nerve was not responsive to stimulus. Because it's really the doctor's subjective reaction to, or interpretation I should say, because this particular doctor didn't even examine. It's his opinion on what the EMG says, right? Well, no, it's speculation. His opinion was it's unknown cause. And so it really doesn't provide affirmative evidence one way or the other as to the causation element. It's the cause he picks up by the history. That's correct. It's assumed. And the history did not include any of the chronic conditions. Does he have to assume his patient's lying to him? He doesn't. But he has to have some reasonably reliable non-speculative causal link for the injury. And in this particular case, just a reasonable jury could not rely on that evidence. It would set the bar much too low, Your Honor, the point that I think you said you're sympathetic to. A lot of those cases went to the jury in my day, I'm afraid. You know, all this really goes to the extent of injury. Morrison, the plaintiff's injury there was simply bruises and marks on his wrist. And whether the plaintiff had indentations on his wrist or not, it's not an issue that requires expert testimony. So whether there was greater injury and whether there's medical proof to support it is kind of beside the point as to whether, as to the issue of whether this case falls squarely within the rule of Morrison. Well, Your Honor, and to respond briefly since I've reserved time for rebuttal, the Morrison case included bruising. This one doesn't. Indentations... I shouldn't even have asked the question. I wasn't paying attention to your light. That's fine. And I'll just say briefly, I don't think there's a case in the Sixth Circuit that says mere indentations is adequate to get you over the sum injury bar. Thank you, Your Honors. Thank you. Good morning, Your Honors. Kenneth Feingold appearing on behalf of the appellee, Albert Hanson. First of all, the question of jurisdiction really is what hovers over this appeal, because this is, of course, an interlocutory appeal. And it's clear that appellant's interlocutory appeal seeks to overturn the settled law of the Sixth Circuit regarding the clearly established right of arrestees to be free from excessive force based upon the use of excessive handcuffing. Now, unfortunately for defendant, interlocutory appellate jurisdiction does not extend, in this case, based upon the trial court's finding of genuine issues of fact in denial of summary judgment based upon qualified immunity. Our Supreme Court in Mitchell v. Forsyth and Johnson v. Jones basically stated that no such interlocutory appellate jurisdiction extends when there are genuine issues of fact in the trial record. Interlocutory appellate jurisdiction extends only to issues of law which may involve whether or not an alleged violation constitutes a violation of a clearly established right. Now, the right to be free from excessive handcuffing is a clearly established right in the Sixth Circuit for the past 15 years. And therefore, defendants, appellants attempt to overturn what is known as a clearly established right by way of an interlocutory appeal, in this case, is clearly improper. So we move to the substance of this case, if you will. The facts are really very straightforward. The facts are that Mr. Hansen was arrested arising out of a routine traffic stop and he was placed in handcuffs by Trooper Aper in a manner that were excessively tight. Mr. Hansen told the officer that the handcuffs were too tight. They were hurting him on multiple occasions. The trooper made no effort to either loosen the cuffs or to otherwise address the issue. According to Mr. Hansen, Trooper Aper responded with what might be evidence of a hostile statement, essentially that the handcuffs are supposed to hurt. Furthermore, Mr. Hansen indeed sustained a serious injury as a result of the excessive force that evidenced a crushing injury to the radial nerve, likely caused by history to the handcuffing incident. Now the trial court found that each of these elements, if you will, were genuine issues of fact such that summary judgment should be denied and precluded qualified immunity. The elements of an excessive handcuffing case, according to the cases beginning with Martin up through Lyons, if you will, essentially state that an arrestee, a plaintiff, alleges a proper excessive handcuffing case when in fact he can show that the arresting officer ignored complaints of too tight handcuffs and further alleges some injury as a result thereof. The record in this case is of course replete with the references of Mr. Hansen's repeated complaints over an extended period of time. We're not talking about five minutes, ten minutes, we're talking about thirty to forty minutes of excessive handcuffs that are too tight which are causing pain, if you will. Trooper Aper admits that he was aware of Mr. Hansen's complaints. He admits further that he had actual knowledge of the potential for injury arising out of or due to excessive or too tight handcuffs. Of course he denies making any hostile statement to the effect that handcuffs are supposed to hurt, but he further admits that he made no effort to either loosen or take any action to address the problem. So plaintiff, a Pelley in this case, has in fact set forth a proper case for excessive handcuffing based upon genuine issues of fact to go to the jury. What the appellant is trying to do is impose a higher level of particularity in handcuffing cases in order to expand the qualified immunity that is otherwise afforded law enforcement officers. And they are doing so by way of relying upon unpublished decisions, Fettus, Lee, and O'Malley I believe it is, that impose this higher level of particularity in these excessive handcuffing cases. Unfortunately those three cases can be easily distinguished, first of all on the facts, because they related or regarded either unrelated injuries or de minimis injuries at best. Now more importantly, this court has already reviewed and rejected the holdings in those cases in the case of Baines v. Cleland. The court rejected the particularity, if you will, the increased heightened particularity standard imposed in those cases basically because of the failure of those cases to reconcile the clearly established right analysis set forth by the Supreme Court in Hope v. Pelzer, which essentially warned against the danger of over-reliance on factual similarity. The defendant's appellant's fear that all cases now are jury questions thereby nullifying qualified immunity is really without any foundation because the law really is and always has been that officers are responsible for acting reasonably. The reasonableness standard under the Fourth Amendment analysis based upon totality of circumstances. That's what the standard always has been. That's what it continues to be. A law enforcement officer needs no further particularity to know that if an arrestee is complaining of too tight handcuffs, he must do something reasonable under the circumstances, the totality of the circumstances, to prevent a violation of a clearly established right. And for that reason, the defendant's appellant's appeal should be denied on the merits itself. Are there any questions? Well your opposing counsel says that the two of you agree on the facts. Well we don't agree on the facts. That's just it. And neither does the defendant, I think, agree that the officer, Aper, made a hostile statement that the handcuffs were supposed to hurt. And the reason he can't agree to that, despite his statement to the contrary, is that if he were to do that, if he were to agree that that is what in fact happened, then that would be evidence of malice, or arguably evidence of malice. And that would be exactly what the defendant's appellants are trying to say what needs to be shown in a case with a heightened level of particularity, that he meant to hurt him. Well, just counting your jury argument as you get louder, this is still an appellate court, but what do we do with the evidence that the trooper says that he put the handcuffs on properly, put his finger in or something to provide more space when he clamped it. That's a fact that's uncontradicted. And then one could say, why do I need to check the handcuffs again? I put them on properly. There's enough room. Well, that's a very good question. In this particular case, the testimony is that he made no such attempt to do the finger test, if you will. I thought he did before he put the, as he put the cuffs on. Well, my client indicates that he did not do that at the time of the, at any time of the placement or thereafter. But the point is that handcuffs can indeed get tighter, if you will, if they're not appropriately double locked. And even when they are double locked, presumably mechanical objects can fail, if you will, and become tighter, if you will. It's also a situation where, because of the... that if you put them on correctly, it would take some time for these physiological occurrences to happen. And he's saying within 20 minutes or so, after these changes, I'm going to be there to take them off. So why do I stop my car and do that? I mean, there has to be some reasonableness here, it seems to me. Well, and that's where the totality of the circumstances come in. Because if we're talking about a situation which is presumably very short, a matter of a couple of minutes or something, then... No, no, I'm saying 20 minutes, but I put them on correctly. It took 10 minutes for these handcuffs to do what you say they do, which is not in the record, I don't think. But I'll take that as an assumption. And he figures, I'm in a squad car taking this guy back, and I've got 20 minutes to get him there. And he can hang on, I don't think it's... I mean, if you take the totality of the circumstances looking at it that way, it seems pretty reasonable. Well, not necessarily. I mean, it all depends. I mean, 20 minutes could be an eternity. It could be an eternity under the circumstances existing at the time. And I must also suggest... Well, then you get into what the nature of the injury is. And although you heard me argue on your behalf that I thought there was an injury, but it doesn't seem to me that it's such a serious injury. Well, bones aren't sticking out. I mean, it's not an openly obvious situation where blood is evident. We're dealing with an injury to a nerve. You can't see that. You can only see a manifestation of tightness by way of indentations, et cetera. The only way that or the guy's complained. He may still even go take a look and say, look loose to me. Where would we be then? Well, that, again, goes to the totality of the circumstances. Because it's not just loosening the handcuffs that are at issue here. It's taking a reasonable action in response. I went through a whole scenario, and I didn't hear you say why that was unreasonable. You just jumped then to the conclusion and say, looking back, that makes it... I can address that. Because oftentimes, and in this case as well, the record shows that his position in the patrol vehicle with his hands behind his back in the close confines of the back seat was a contributing cause. And it is known, it is known that when you are in a confined area with handcuffs behind your back, oftentimes officers will put the handcuffs in the front. Is this all in the record what you're arguing right now? Is this all in the record what you're arguing right now? I believe it is, yes. That it's known that if you put them in the back seat, these things are going to happen. Well, okay. I mean, I don't think you should argue facts. You want us to be reasonable on the facts that are in the record? I appreciate that, Your Honor. But my only point, my only point is it is the province of the arresting officer to take some action, reasonable action, under the totality of the circumstances. Now, if this is, if he's dealing with a truly exigent circumstance where it is truly unreasonable to expect him to do such a thing because of the various Graham versus Connor factors, the severity of the crime and the threat to immediate safety, et cetera, then maybe his failure to act was not unreasonable. But under these facts, as known, his failure to do anything in the face of repeated complaints and ultimate injury is, in fact, a genuine issue of fact under the Sixth Circuit law. I see that you're out of time. I am. Thank you. Thank you. Any rebuttal? Yes, Your Honor. There's a couple of factual things and legal things to clarify. References to a back seat are inaccurate, Your Honor, Judge SirHeinrich. Maybe a reference to a seat back would be accurate. But Trooper Aper had a canine that was in the back seat. Hanson and Aper both agree and testified that Hanson was in the front seat. And that first complaint didn't come until five minutes into the encounter because for about five minutes, Hanson was on his feet standing between the two cars when the backup deputy was showing up and when Trooper Aper then turned his attention to Mr. Hall, the passenger of the car, and they began searching the luggage, searching through the vehicle. And so really, even though they're pushing a 30 to 40-minute timeline here, it's closer to 20 or 25 minutes. The first complaint was five minutes in, and Hanson's best evidence. I'm saying about 20 minutes. Sure. And Hanson's best estimate was I was out on my feet handcuffed for about five minutes. I made my first complaint to the trooper. He ignored it. I decided at that point it wasn't worth complaining anymore. And then the final complaint came sometime later, and shortly thereafter the handcuffs were taken off and he paid the bond and then followed the trooper in his car so that his friend could go to an ATM and post his bond. So I think the line of questioning by Judge Sir Heinrich is useful because the question here is did Trooper Aper act in such a way that's beyond the pale? Hanson's version of events. That's why this court has jurisdiction. Taking as true Hanson's version of events, is the conduct of Trooper Aper so beyond the pale that no reasonable officer would have acted that way and that it was plain incompetence or a knowing violation of the law? And our argument is that out in the field there needs to be some more flexibility here. You cannot have a jury submissible issue on such a nominal routine case like this one. I also want to correct that counsel referred to three unpublished cases as what was relied upon. O'Malley is the third one. That one's published. It's 652F3662, published by the Sixth Circuit in 2011. This traffic stop happened in September of 2013. Baines, the case that's been relied upon by the appellee here as discrediting this whole line of cases, that was decided in 2015. So during that window between 2011 and 2015, what was clearly established for this trooper? It was not clearly established that what is being sought here should have happened, that qualified immunity is not present. And I guess a final point I want to make for the court is that elements of a case, elements of a claim, and the existence of an affirmative defense are two distinct legal inquiries. Nominally meeting the three elements of a handcuffing case doesn't absolve this court's duty or the district court's duty to still do a Fourth Amendment qualified immunity analysis about what was reasonable under Graham v. Conner. And so just to perhaps complete the court's consideration, consider a couple of hypotheticals. If you have an unconscious suspect whose wrists are broken, who suffers a severe injury when handcuffed while unconscious, that person's not going to meet the first two elements of complaining about the handcuffs and then having the trooper ignore it. But that person would likely still have a Fourth Amendment claim if he had a serious injury arising out of that handcuffing. The converse is true in this case. Even if this court believes, giving every break to the plaintiff here, that the three elements of a handcuffing claim are met here, there still needs to be a totality of the circumstances Fourth Amendment qualified immunity analysis. And at the time, in September of 2013, Trooper Aper was not on fair notice that what he's alleged to have done violated clearly established Fourth Amendment law. We therefore urge the court to reverse the district court and grant the protection of qualified immunity to Trooper Aper. Thank you. Thank you, and the case is submitted.